## Bronaugh, et al. v. Commonwealth.

(Decided May 11, 1920.)

### Appeal from Harlan Circuit Court.

1. Taxation—Forfeiture of Land Delinquent.—Under article III, chapter 108, Ky. Stats., it is the duty of each owner and claimant

to ownership of lands to list the lands for taxation and to pay the taxes assessed against him, and the fact that one claimant of the land has listed the land and paid the tax does not relieve any other claimant from the duty of listing the lands under his title or claim of title, and if he fails to do so, for five successive years it is a cause of forfeiture and his title to the lands may be forfeited by a judgment of the circuit court, and vested in the Commonwealth.

2. Taxation—Forfeiture of Land Delinquent.—After the commencement of an action by the Commonwealth's Attorney, for the forfeiture to the Commonwealth of the title of an owner or claimant of lands, under section 4076k, Ky. Stats., a proceeding by a revenue agent, under section 4260, Ky. Stats., to list the lands and collect the taxes, as property omitted from assessment for the same years, for which a failure to list and pay the taxes, the forfeiture is sought, is not authorized, and the payment of the taxes by the owner or claimant under such a proceeding does not extinguish the cause of forfeiture, as the pending of the former action is a bar to the latter proceeding, if invoked.

3. Taxation—Forfeiture of Land Delinquent.—The circuit court of the county wherein the land, or a part thereof lies, has jurisdiction to declare the title to it, forfeited, for the non-assessment for and the non-payment of taxes, thereon, and separate tracts of land, embraced by separate patents or deeds, must be proceeded against in the counties where wholly or in part situated.

4. Taxation—Forfeiture of Land Delinquent.—Where the petition seeking a forfeiture of a title to lands for non-assessment for and non-payment of taxes, under section 4076k, Ky. Stats., against unknown owners, describes them as the real owners of the land, in contradistinction of claimants, and the affidavit likewise describes them as owners, a warning order against them as the unknown owners, and the publication required by section 4076d, Ky. Stats., is a substantial compliance with the requirements of the statutes and Civil Code, in such cases, and will be the commencement of an action against them and bring them before the court, in due course.

CLAY & CARTER, E. C. O'REAR, FORMAN & FORMAN and H. C. CLAY for appellants.

WILLIAM B. DIXON, J. G. FORRESTER, Commonwealth's Attorney, and JAMES H. JEFFRIES for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This is an action instituted in the name of the Commonwealth of Kentucky, as plaintiff, in the circuit court of Harlan county, by the Commonwealth's attorney for the 26th judicial district, in which that county is situated. The purpose of the action was to secure a for-

feiture of the title and claim of title held and claimed by the defendants, to 20,000 acres of land, part of which is situated in Harlan county and the remainder in Leslie county, by virtue of the provisions of article 3, of chaptre 108 of Kentucky Statutes, and which includes sections 4076b to 4076k, inclusive. The ground upon which the forfeiture is sought is the alleged failure of the defendants, or any of them, to list the lands for taxation, or to pay the taxes thereon for the years 1901 to 1917, inclusive. The 20,000 acres of land is described in the petition by metes and bounds as one boundary, but it is alleged, that it is embraced by three patents, which were granted by the Commonwealth of Virginia to one Malcolm Hart, in the year 1788; two of the patents being grants for and embracing 6,000 acres each, and the other 8,000 acres, but, that the patents lie contiguous to each other and the lands embraced by them make one connected boundary of land. Certified copies of the three patents were filed with the petition and made a part of it and these are the only grants on file, as the basis of the titles sought to be forfeited. The defendants to the petition and the petition as amended were the personal and real representatives of George W. Bramblett and W. L. Bramblett, whom we will hereafter refer to as the Brambletts; the 20,000 acres of land described as being embraced in the three patents granted to Malcolm Hart, as above stated; "and the unknown defendants, unknown heirs, unknown devisees and unknown vendees of said Malcolm Hart, patentee aforesaid; unknown owners of all of the above mentioned 20,000 acre boundary of land, by, through or under the above named three grants all of whom are sued as unknown defendants herein:"

Each of the Brambletts was designated by name and served with a summons, or brought before the court by constructive process.

It was alleged in the petition and amendment thereto, that the Brambletts claimed to be the owners of the lands as heirs of the remote vendees of Malcolm Hart, but, that in fact they were not the owners, and their claim to ownership was invalid, in that, two of the deeds of conveyance which formed two links in the chain of the title under which they claimed, and through which they necessarily claimed title to the lands, were forgeries, of recent date; that their claim of title was based upon a deed of conveyance from Malcolm Hart to Stephen Trabue, and

upon a deed from Stephen Trabue, to S. F. J. Trabue, both of which deeds were forgeries, neither of which having ever been executed by either of them, or to either of them, and in fact the deeds had been forged within the five years last passed, and many years after the deaths of Stephen Trabue and S. F. J. Trabue, and for which reason the Brambletts had no title and no valid claim to any title to the lands.

After several motions, which were made by the Brambletts and disposed of adversely to them, but, which are not necessary to be here considered, the Brambletts interposed a general demurrer to the petition which was sustained by the court, and thereafter the petition was not amended, nor dismissed, and for which reason, it appears that the action is still pending as against the Brambletts in the trial court. The Commonwealth of Kentucky has not prayed any appeal from the judgment of the court sustaining the demurrer of the Brambletts to its petition, and the soundness of that judgment is not before this court for consideration, neither is any right or claim of the Brambletts before this court for adjudication, as they are not parties to the appeal, herein.

On the 22nd day of October, 1917, the day, the petition was filed, a warning order was made upon the petition by the clerk of the Harlan circuit court, and in this warning order "the unknown defendants, unknown heirs at law, unknown devisees and unknown vendees of said Malcolm Hart, patentee aforesaid; unknown owners of all of the above mentioned 20,000 acre boundary of land described in the petition" and also described in the three patents, exhibits "a," "b" and "c," filed with the petition herein, "by, through and under the above named three grants, all of whom are sued as unknown defendants herein," were warned to appear in the court and defend the action, and an attorney was appointed by the clerk for the unknown defendants in the usual way. The caption of the warning order was the same as the caption of the petition. In addition to the warning order made upon the petition, a copy of the petition, with the warning order thereon, and copies of the three patents were posted by the clerk on the same day the petition was filed, on a bulletin board at the front door of the court house, of Harlan county, as provided for by section 4076d Ky. Stats., and the fact and date of their posting were en-

dorsed upon the petition by the clerk. The filing of the petition, the making of the warning order, and the publication by posting occurred on the 22nd day of October, 1917, and thereafter on September 4th, 1918, three of the appellants, claiming to be heirs of Malcolm Hart and to be of the defendants described in the petition as unknown defendants and present owners of the lands by inheritance from Hart, who held title under the three patents on file, and claiming that they appeared only for the purpose of the motion and declining to enter their appearances for any other purpose, moved the court to quash the warning order, upon the ground, that, neither the petition nor affidavit stated facts sufficient to authorize the making of the warning order. This motion was overruled, by the court. Thereafter about ninety-five persons, whom we will hereafter call the Hart heirs, claiming to be the heirs and devisees of Hart and owners of the land by descent and devise from him, under the patents on file, interposed a general demurrer to the petition as amended, and without waiving the demurrer filed their joint and separate answers. The plaintiff then interposed a general demurrer to each paragraph of the answer, and to the answer as a whole. The demurrer of the Hart heirs to the petition as amended was overruled and the demurrer of the plaintiff to the answer of the Hart heirs was sustained to each of the first four paragraphs of the answer, and to the fifth paragraph, to the extent, that the paragraph interposed the statutes of limitation, as a defense, to the cause of forfeiture of the Hart heirs' title to the lands, for non-assessment and non-payment of the taxes for the five successive years immediately preceding the bringing of the action, and overruled the demurrer to the other matters pleaded in the paragraph. The Hart heirs declining to plead, further, the cause was submitted for judgment upon the pleadings and exhibits, and the averments of the petition as amended were adjudged to be true, and that all the right, title, interest and claim to ownership, of the lands by each of the defendants through, by or under the patents on file, to be forfeited and transferred to the Commonwealth of Kentucky, and the cause ordered to be continued for such further orders and judgments, as are provided by law in such cases. From the judgment the Hart heirs have appealed and insist upon a reversal of it for the following reasons:

(1)   The court erred to the prejudice of their substantial rights in overruling their motion to quash the warning order.

(2)   The court erred in overruling the demurrer to the petition as amended.

(3)   The court erred in sustaining the demurrer of the plaintiff to the first, second, third and fourth paragraphs of the answer and in part to the fifth paragraph thereof.

° These grounds of reversal will be considered in their order.

(a)   The Hart heirs who moved the court to quash and set aside the warning order, as an insufficient process to bring them before the court, afterward joining with others who describe themselves as heirs and devisees of Hart, interposed a general demurrer to the petition, which act would have entered their appearances to the action for all purposes of adjudication of the issues therein, and, ordinarily, in such a state of case, the insufficiency of the warning order, or the affidavit upon which it was based, would, after the entry of their appearances, be immaterial; but, it is here contended, that by reason of the insufficiency of the warning order, they were not before the court as defendants, and no action was pending against them for a forfeiture of their title to the lands, until after a proceeding had been instituted against them, by a revenue agent, to have their title to the lands, assessed for taxation for each of the five years, just preceding the institution of the action, and they had paid the taxes, in the manner set out in paragraph four of their answer, for the years for the non-assessment and non-payment of the taxes, on account of which the forfeiture was sought, and thus having paid the taxes, no ground of forfeiture existed, at the time of the institution of the action; the court having held, that the defense of the statutes of limitation was available against any cause of forfeiture which had arisen more than five years previous to the commencement of the action. The affidavit upon which the warning order is based, is embraced by the petition, which dispenses with the necessity of a separate affidavit, Wilson, v. Teague, 95 Ky. 47; Alley v. Hastie, 15 R. 690; but, it is contended that the averments of the petition are insufficient to authorize or require a warning order. The statute, section 4076d, *supra,* which authorizes such an action, does not pre-

scribe the requirements of an affidavit for a warning order, when the "owner or claimant" of the title, to the lands, which is sought to be forfeited, is unknown, and hence the provisions of the Civil Code must be appealed to. A section of the statute above referred to provides that the requirements of the Civil Code respecting process and service thereof be adhered to. Section 692, subsection 3, Civil Code, concerning a defendant, whose name and place of residence are unknown, provides: "If his name and place of residence be unknown to the plaintiff, he shall be subject to, and be entitled to, the benefit of the provisions of this Code concerning non-residents of this state." Subsection 7, of section 57, and subsection 1, of section 58, Civil Code, provide, that, if the name and place of residence of a defendant be unknown to the plaintiff, the clerk shall make a warning order against him, when the affidavit of plaintiff, or his agent, or attorney, states the necessary grounds of an application for the order. The ground of the application for the order, in the instant case, was that the names and places of residence of the defendants, the owners of the lands, were unknown to the plaintiff. The statements of the petition, which were verified by the Commonwealth's attorney were that neither he, nor the plaintiff, knew the name or "residence" or post office address of any of the present owners of the lands, who were sued as "unknown defendants." The objection to the affidavit is that the Commonwealth's attorney stated that he did not know the "residence" of the defendants, instead of stating, that he did not know the places of their residence. A failure to literally comply with these provisions of the Civil Code is not fatal to a warning order, if a substantial compliance is made. Perkins v. McCarley, 97 Ky. 43. To say that such a place is the "residence" of one, however, can have no other meaning, than the place of residence, or where such one resides. As one usually resides at the place of his post office address, to say that his post office address is unknown, can have no other meaning, than that the declarant does not know the place of his residence. The objection urged to the warning order is that it designates the "unknown defendants," as the "owners" of the lands sought to be forfeited, when the statute, section 4076d, *supra,* provides that if the Commonwealth's attorney does not know the names

of the "owners or claimants," of the lands, in a proceeding to forfeit their "title or claim," and to vest same in the Commonwealth, they should be designated as the "unknown owners and claimants thereof." That a distinction exists between an "owner" and one, who is not a valid "owner," but, claims to be one, may be conceded; and the provisions of article III, chapter 108, *supra,* maintains such a distinction throughout, but, it is not possible to discern, in the instance, where one is the "owner," that such term, when applied to him, does not, also, include his status, as a claimant of the title of which he is the owner. A claimant of lands, under a mere color of title, as contra-distinguished from the owner of the real title, is nevertheless not only a claimant of the lands, but the owner of the invalid title under which he claims. The terms "owner" and "claimant," were, however, made use of by the lawmakers for the purpose of including every class, which could or does make claim to the ownership of lands, as it was not the legislative intention to either make it necessary for or to authorize, in a proceeding under the statute, for a forfeiture, for the non-assessment for and non-payment of taxes, the Commonwealth to litigate with any one concerning or to determine the validity or invalidity of the title of any claimant, and hence, as will be hereafter more fully discussed, it made the title of every one to lands, either good or bad, a subject of taxation, and provided for a forfeiture of his title, or claim of title, when there is a failure to comply with the law as to assessment for taxation, and the payment of taxes. The statute, however, does not require, that one who is an owner of lands shall also be designated as a mere claimant. Besides, the owner's title may be forfeited, whether he makes a claim to ownership or not. It is said, that a statute which denounces a forfeiture must be strictly construed and to secure the result, which it denounces, its requirements must be strictly pursued, but, it is not apprehended that this principle of application of such a statute means anything more, than that the essential facts to constitute a forfeiture must exist, and the proceedings to effectuate it must be in substantial compliance with its terms, so that there be no extension of its effects beyond its terms and spirit. The warning order is against the unknown heirs, unknown devisees and unknown vendees of Malcolm Hart, the owners of the lands. The verified peti-

tion, however, declares that Malcolm Hart never conveyed any portion of the lands to any one, and hence the unknown owners warned to answer the petition are limited to the unknown heirs and unknown devisees of Hart, but, the inclusion of the unknown vendees of Hart in the warning order could not affect its sufficiency as a process against the heirs and devisees, who are described as the owners. The petition described the Brambletts as mere claimants of the ownership under an invalid title, but, the title, which was sought to be forfeited, was that which the Hart heirs were the owners of, by inheritance and devise from the patentee, Malcolm Hart, by, under, and through the patents on file, and there is no claim, that they were mere claimants of the land, under a color of title, or by reason of some invalid title. Hence the designation of the Hart heirs, in the warning order, as the owners of the land, including both their title as owners and claimants of ownership, together with the publication of the petition, warning order and patents, at the court house door was a substantial compliance with the statute and the commencement of an action against the heirs and devisees of Hart, as the owners and claimants of the title to the lands in controversy and had the effect of bringing them before the court, in due course.

(b) The demurrer of the Hart heirs, to the petition, involves a consideration of the same question raised by the demurrer of the plaintiff to the third paragraph of the answer, and will be considered in that connection.

(c) The Hart heirs, answering on September 4, 1919, as the heirs and devisees of Malcolm Hart, admit their ownership of the lands as such by devise and inheritance, from the original grantee, under, by and through the three patents on file, and did not deny, that they had wholly failed to list for taxation, or pay the taxes on the lands for fifty years before the institution of the action, except, they denied that they had failed to list the lands or to pay the taxes thereon for the five years, immediately preceding the bringing of the action. The judgment of the court sustaining the demurrer to this paragraph will be considered after the demurrers to the third and fourth paragraphs are disposed of.

(d) By the second paragraph of the answer, they denied the jurisdiction of the court to declare their title forfeited to the lands, embraced by the two patents, the

lands within which lie wholly in Leslie county, and the demurrer to this paragraph should have been overruled. The jurisdiction of the court, touching, the actions authorized by the provisions of article III, chapter 108, section 4076k, is conferred and controlled entirely by that statute. The language by which the jurisdiction is conferred is found in section 4076k, and is as follows: "And wherever such failure exists, it shall be the duty of the Commonwealth's attorney to institute an equitable action in the circuit court of the county, wherein the said land, or a part thereof lies. . . ." The invoking of the rules applying to the possession of adjoining tracts of land by one in possession of one of the tracts, does not shed any light upon the question of what court has jurisdiction to entertain proceedings for a forfeiture under the statute, *supra,* nor do such principles have any application to the facts of this case, since it does not appear, that any one has ever had an actual possession of either tract of the land, and if such did appear, it is not discerned how that could influence the decision, unless, a state of facts, also, appeared from which it could be considered, that the defendants or their predecessors, in title, had converted the lands embraced in the three patents into one tract, and to set out what state of facts would have produced such a result is not necessary, to be attempted. Neither do the provisions of the Civil Code which regulate jurisdiction, necessarily shed any light upon the question of jurisdiction, here, since the provisions of article III, chapter 108, *supra,* purport to be a full expression of the legislative will regarding the jurisdiction of the special cause of action created by this statute, and it is as full and complete an expression as any touching lands made by the Civil Code. One of two meanings must be given to the language, "the said land, or any part thereof lies" as used in the statute. It must either be held that the language must be understood in the strictest literal sense, which when applied would make it mean, that, if any part of the land, however, small, which was sought to be forfeited, in such an action, was situated, in a county, the circuit court of that county would have jurisdiction of all the lands, a forfeiture of which was desired, whether the lands consisted of one or many tracts, or whether of many tracts, they were or were not contiguous, or whether situated, in one, or two or several counties. The effect

of such a construction would be, that if any portion of the lands was situated in Harlan county, that circumstance would confer the jurisdiction upon the circuit court of that county, to deal with all the tracts, although one or more might be situated in Pike county, and others in various other counties, and all could be embraced by and dealt with in one action in Harlan county. It is insisted in the instant case, that the title of the Hart heirs to the bodies of lands, embraced, in each of the three patents are similar, and the three boundaries of lands lie contiguous to each other, and for those reasons, jurisdiction to deal with each of them is conferred by the statute upon the courts of any county, wherein a portion of either of the boundaries is situated. If such meaning should be applied to the words of the statute, "the said land or any part thereof," it would result, that in cases where fifty or a hundred contiguous patents of two hundred acres, each, have been granted to the same individual, as has often occurred, in the past, and although these numerous patents should cover a large part of the lands of one county, yet, if a small portion of one of them should extend into another county, the circuit court of the latter would have jurisdiction to deal with and enforce a forfeiture as to all of them, and if an action was first instituted in the latter county, the court of it would have jurisdiction to the exclusion of the court of the county, wherein practically all of the lands are situated. It is not considered that the legislature intended any such result to be produced by the legislation. It has been the settled policy, in this state, from time immemorial, to require the lands, which are situated in a county, to be assessed for taxation and the taxes paid in that county, and the records and evidences of such transactions to be kept in such county, and by the officials thereof, and this system prevails to the extent of listing and paying taxes upon the portions of lands covered by one title and embraced, without doubt, in one tract, in the particular county, in which a portion is situated. The proceeding by a revenue agent, or a sheriff of a county, to cause lands to be assessed for taxes, which have been omitted from assessment, is limited to the assessment and the collection of the taxes from the lands, which lie, in a particular county in which the proceeding may be instituted although the result is the assessment of a portion

of the tract in one county, and the remainder, in another, where the tract lies, in part, in two or more counties. It is not assumed, that it was intended, that in a proceeding, like the instant one, which is based upon a failure to list lands and to pay the taxes thereon, should authorize a departure so radical from the settled policy of the state touching such matters, as to confer jurisdiction upon the courts of a county to deal with such matters, other than the county, in which the lands are situated. The various provisions of article III, chapter 108, *supra,* we think, cast a light upon the purposes which the legislature had in mind in enacting the legislation, which authorizes this proceeding. Section 4076g, Kentucky Statutes, provides, that the title to the lands, when forfeited, shall vest in the occupants of the lands to the extent that they hold same adversely, under a color of title, and have paid the taxes thereon for five previous years. The occupant of the land, in whom such a title is vested, under the judgment of the court, or one searching for the evidences of title, could more conveniently find and establish it, by the records of the county, wherein it is situated, than, if it were in some other or distant county, especially after a sale of the title under the forfeiture has been forgotten. After the sale of a forfeited title is had, the statute provides, that the proceeds shall be applied, after the payments of the costs and attorney's fee, to the payment of the taxes due the county, wherein the land is situated, and this transaction would be attended with difficulty and inconvenience, if the proceedings were had in a county, other than the one, in which the land was situated. The other construction, of which the language, "the land, or any part thereof lies," is susceptible, is that it means a tract of land, the title to which is sought to be forfeited, and that in order to give jurisdiction to the courts of a county, the tract or some portion thereof must be situated in the county, and that a tract of land is a boundary embraced by the evidence or grant of the particular title, which is sought to be forfeited, and this construction seems to be in accordance with the legislative intention. When Malcolm Hart caused the lands to be surveyed, and when the Commonwealth of Virginia granted the three patents to him, three separate tracts of land were carved out from the state's domain, and a separate title was granted to each tract, and these are they upon which the titles now sought to be

forfeited are based. So far as the pleadings show, they have remained separate and distinct tracts, until this day, and nothing appears to have ever been done by either Hart, or his heirs or devisees, to change their status from three tracts into one. The petition avers that the lands are covered by three separate patents each of which describes the lands embraced by it, as a separate, distinct tract or body of land, and the paragraph of the answer under consideration avers that two of these tracts or bodies are situated wholly within Leslie county. The pleader could not change the jurisdiction from one county to another by describing the lands as one boundary, unless, in fact, they did constitute one tract or boundary. For doubtless the same reason, that section 62, of Civil Code, was enacted, changing the common law rule as to jurisdiction for the recovery of the lands or to quiet title thereto, so that if a tract of land was situated in part in two different counties, an action might be maintained, in either county and thus aid convenience and facility in litigation, section 4076k, *supra,* provides that an action to forfeit title under the provisions of that section may be maintained for the forfeiture of title to a tract of land for the non-payment of taxes in any county in which a portion of it lies, but under the provisions of that section, the jurisdiction can not be extended to tracts of lands, which lie wholly within, and the title sought to be forfeited is based upon an instrument, the boundaries of which are entirely within a county, other than in the one the action is instituted.

(e) By the third paragraph of the answer, the Hart heirs alleged that previous to the filing of this action, on the 20th day of April, 1916, and on September 16, 1916, respectively, the Commonwealth of Kentucky upon the relation of a revenue agent, with the approval of the supervisor, as provided in section 4260, Kentucky Statutes, instituted proceedings in the Leslie and Harlan county courts, respectively, against the Brambletts for the purpose of causing the portion of the lands in said counties, respectively, to be assessed for taxation as property omitted from assessment, for the years 1911, 1912, 1913, 1914 and 1915 respectively, and that as a result of such proceedings, the lands were retroactively assessed for each of those years, by judgment, of the county courts, and in pursuance of the judgments the Brambletts paid the taxes for each of those years, and

such penalties as provided by law in such cases. Copies
of the statements filed by the revenue agent, the answers
of the Brambletts and the judgments were filed as parts
of the answer and relied upon as a defense to the for-
feiture sought in the petition.

The contention of the Hart heirs is that there is a
privity of title between them and the Brambletts, and
the latter having suffered an assessment of the lands
for taxes, and paid the taxes with the penalties for a
period of five years, some of which were of the five years
immediately preceding the institution of the action for
a forfeiture, that such payments inured to their benefit
and extinguished the cause of forfeiture, or the right to
have same declared to be forfeited at the suit of the Com-
monwealth by the Commonwealth's attorney. The argu-
ment supporting this contention is, that, the Common-
wealth is only interested in securing the taxes due it, and
is entitled to collect same but once upon the land, which
it has already done, for certain of the years, within the
period wherein the failure to list and pay the taxes, is
the alleged cause of the forfeiture, and that the Com-
monwealth has no right to require them to enter into a
litigation with another to determine which has the
superior title, or to litigate with any owner or claimant
of the lands to determine whether such owner or claim-
ant has a title and is bound to accept for the purposes
of taxation an apparent title, such, as it insists, that the
petition shows that the Brambletts have; and that for-
feitures are not favored. It may be conceded, that
article III, chapter 108, *supra,* is primarily a revenue
statute and has for its primary purpose the enforcement
of the payment of the state's revenues, but when the
underlying purpose for its enactment is considered, it
is apparent, that the state's interest is not limited to
the mere securing of the revenues due from the lands for
a few years, out of many, but, an incidental purpose in
addition thereto, was to rid the lands for the future, of
the incubus of many conflicting titles and to enable its
improvement and settlement, that the lands may be pro-
ductive of a greater revenue, and the holders better en-
abled to pay it. It is a matter of common knowledge,
that in a large portion of the state hundreds of thousands
of acres of land were covered by grants, the holders
under which neither used, dwelt upon nor cultivated the
land, nor did they assess them for taxation, nor pay any

portion of the burden of taxation necessary to sustain the local and state governments. The instant action presents a most flagrant case of that kind. The demurrer admits that the Hart heirs, nor any one for them, as the owners of the title, sought herein to be forfeited, to the lands in controversy, had not paid any of the taxes due from the lands, nor assessed them for taxation, for at least as much as fifty years, preceding the institution of the action. Hence, in 1906, the statute regulating the assessment of the lands for taxation and the payment of taxes thereon, embraced in article III, chapter 108, *supra*, was enacted, and under its provisions, each owner of the lands, and each claimant to a title to land was required to assess it for taxation and to pay the taxes thereon, and to compel those who might be stubbornly derelict in that duty, the penalty of a forfeiture of his title or claim to the lands was provided, if he persisted in failing to list the land or to pay the taxes thereon, for any five successive years, after the year 1906. On account of conflicting claims to ownership of many of the lands, the state could not afford to enter into litigation to determine who was the real owner, and it was only just that one claimant of title be excused from paying the taxes, when another refused to do so. In Eastern Kentucky Coal Lands Corporation v. Commonwealth, 127 Ky. 767, article III, chapter 108, *supra*, was under consideration by this court, and it was there construed to mean, that a good title and a bad title to the same lands was property of the claimants of each, and each was a subject of taxation, and that such was not double taxation, the opinion in that case saying: "That which the state taxes is the property of the claimant—not the land. The right to possess, the title or legal title of dominion, is that property which the law protects, and is that property which it taxes. If two persons claim the same land, each having a title, but undetermined which is superior, shall the state stand back until their dispute is settled before it can exact a tax from the owners? For if one of them can lawfully refuse to list his claim, which is his estate in the land, then the other could, also." Further it was said "The state then may tax whatever is property within its jurisdiction. If one has an imperfect title to land that is property, and it may be taxed, although another have a more perfect claim to the same land, which is, also, taxed as his prop-

erty. That is not double taxation.'' That judgment of
this court was, upon appeal, approved by the Supreme
Court of the United States, and the principles of it have
been adhered to since its rendition as see Ky. Union Com-
pany v. Commonwealth, 128 Ky. 610; Commonwealth v.
Gatliff, 132 Ky. 95, and Commonwealth v. Cornett, 146
Ky. 45. It will be observed that in the various sections
of article III, chapter 108, *supra,* the claimants to the
ownership of lands are referred to and distinguished as
''owners and claimants.'' As a matter of course, there
can be but a single or several joint owners of the same
piece of land, and if the legislature intended, that only
the true title to same, held by the true owners, should be
a subject of taxation, the continual reference in the stat-
ute to ''claimants,'' as distinguished from the ''owners,''
would be without reason. For instance, in section 4076b,
the language is ''it shall be the duty of each owner or
claimant of land to pay all the taxes which have been as-
sessed and which should have been assessed against him,
and those under whom he claims as the owner or claim-
ant, etc. . . . '' and ''the fact that said land has been
listed for taxation or the taxes have been paid thereon
by another claimant shall not relieve against the duty
herein imposed.'' In section 4076d, *supra,* it is enacted:
''The petition of the plaintiff shall allege the facts con-
stituting the cause of forfeiture, under the provisions
of this article, and there shall be filed with it a copy of
the grant or instrument upon which the title or claim
sought to be forfeited is based; and no other title, claim
or possession, or continuity thereof, whether owned or
claimed by the defendant or others, shall be forfeited
or in any manner affected by said proceeding. The
prayer shall be for a judgment of forfeiture, and sale of
the title or claim in the petition described.''

It is true, the language from the statutes above
quoted has direct reference to the forfeiture incurred,
for a failure to list and pay the taxes upon the lands,
for the years between 1901 and 1905 inclusive, but sec-
tion 4076k, *supra,* which provides for a forfeiture for
failure to list and pay the taxes on lands for five succes-
sive years after 1906, and under the provisions of which
this action must be maintained is a part of article III,
and the latter section provides that the actions and pro-
ceedings under it shall conform to the provisions of the
article wherever applicable, and a difference in the sub-

jects to be listed and taxes paid thereon, are unchanged from the requirements of the previous provisions of the article and section 4076k, provides for a forfeiture when the "owner or claimant of land" fails for five successive years to list and to pay the taxes thereon. That the claim to ownership to the lands by the Brambletts is not the same as the claim to ownership by the Hart heirs, and is not the same title within the meaning of the statute is apparent. Neither the Brambletts nor the Hart heirs claim title under the other and either one or the other holds true title to the land, and·hence their claims are necessarily adversary to each other. A common source of title, each claims, but, there is no more privity between them, than if they claimed under different grants from the Commonwealth as a common source of title, instead of Malcolm Hart; and while the statute has been described as a drastic one, and, forfeitures are not favored and statutes providing for them are not extended beyond their terms by construction, there is no reason why, such a statute should not be enforced within its terms and spirit and when the legislative authority has expressly directed it. Hence it is concluded that the assessment made upon the lands in the name of the Brambletts, and the payment of the taxes for 1911, 1912, 1913, 1914 and 1915 by them, was an assessment and payment of taxes upon their own claim of title, only, and did not inure to the benefit of the claim of title by the Hart heirs. Whatever may be the rule applicable to personal property, where the property has been assessed and taxed as the property of one in whose hands it is, and is sought to be assessed and taxed, as against one who is the real owner of it, and where one of the parties claims title directly under the other, as in Spalding v. O'Callaghan, 25 K. L. R. 629, and the rule existing before the enactment of the statute of 1906, with reference to the taxation of lands; under the present statute, and the decisions of this court, the rule is as herein announced.

(f)   By the fourth paragraph of the answer, the Hart heirs set forth as a defense that before the rendition of the judgment appealed from, the Commonwealth of Kentucky, upon the relation of a revenue agent, with the approval of the supervisor of revenue agents instituted proceedings against the Hart heirs in the county courts of Leslie and Harlan counties, respectively, for

the purpose of causing the portions of the lands sought to be forfeited, which lie in each of those counties, respectively, to be assessed as property omitted from assessment for each of the five years preceding the institution of this suit, and that these proceedings resulted in the assessment of the lands for each of those years as the property of the Hart heirs by the judgments of those courts and the payment of taxes and penalties by them and by reason of these proceedings and payment of the taxes and penalties assessed, the cause of forfeiture, if any, was extinguished.  Copies of the statements, answers and judgments of the court were filed as parts of defendants' answer.  The Hart heirs, or a portion of them, claiming to represent all, entered their appearances to these proceedings of the revenue agent and filed answers, wherein, they confessed the failure to list the lands for taxation, and, also, confessed the valuation placed upon them by the agent.  Under the provisions of section 4260, Ky. Stats., with the approval of the supervisor of agents, a revenue agent, and also, a sheriff of the county, have authority to institute proceedings, to cause the assessment of property omitted from assessment by the assessing authorities, that the taxes may be collected, and when collected, together with the penalty, provided by law, in such cases, he becomes the recipient of the penalty. Under the provisions of section 4076k, *supra,* it is made the duty of the Commonwealth's attorney, when an owner or claimant of lands has failed for five consecutive years to list the lands for taxation, and to pay the taxes thereon, to institute a suit in equity, to declare a forfeiture of his title, and to vest same in the Commonwealth, and if the owner or claimant fails to purchase same back from the Commonwealth, as provided by section 4076e Kentucky Statutes, the forfeited title to the lands, except such portions as may be vested in occupants of the land under the provisions of 4076g, will be sold, and the proceeds applied to the payment of the costs, including a fee for the Commonwealth's attorney, and then to the payment of the taxes due the county and state, and the remainder to the owner or claimant of the forfeited title.  4076h, Kentucky Statutes. When this action was instituted a cause of forfeiture, of the title of the Hart heirs and devisees to the lands, had matured, and before the institution of the proceedings by the revenue agent, Hart's heirs and devisees,

were before the court upon the warning order and the publication at the court house door, and an action had then been commended and was proceeding against them upon the forfeiture. Article III, chapter 108, *supra,* while minutely defining all the proceedings for a forfeiture.and the method by which a cause of forfeiture may be extinguished where it has occurred previous to the year 1906, does not make any provision for the extinguishment of a cause of forfeiture by the assessment of the property and the payment of the taxes, where the cause of the forfeiture occurs after the year 1906, but, it is provided that after a judgment declaring a forfeiture has been rendered that the owner of the title forfeited may purchase same back from the state by the payment of the taxes, that were or should have been assessed against the title of himself and those under whom he claims, not for five, but for fifty years, if they have been unpaid for that length of time, and the interest, penalties and costs. It is clear that the legislature did not intend that the Commonwealth, through one of its agents, could maintain an action to declare a forfeiture and secure the taxes due it in that way, and at the same time, by another agent, cause the lands to be assessed for the period for which the non-assessment and non-payment of the taxes upon the lands are relied upon for a forfeiture, and secure the payment of the taxes for the same, or part of the same period, again, in that way, and thus render the proceedings for a forfeiture of no effect. The state, having elected to proceed for a forfeiture, could not thereafter maintain a proceeding by a revenue agent to assess the property sought to be forfeited and collect the taxes by such proceeding, and such proceeding could not be maintained except by the acquiescence of the owner or claimant of the land proceeded against, as the action then pending for a forfeiture would be a bar, if interposed, to the proceeding to assess the lands as omitted property. Hence it appears that the proceeding by the revenue agent was not authorized, and presents no defense to the action for a forfeiture.

(g) While in the first paragraph of the answer the Hart heirs deny that they had failed to list their titles to the lands for taxation for the five years immediately preceding the institution of this action, the third and fourth paragraphs of the answer conclusively demon-

strate that the one ground which they have for claiming the payment of the taxes for those years and upon which the denials are based was the payment made by the Brambletts upon their title, and that described by them in the fourth paragraph of the answer, and that neither of such payments constitutes a defense to the action, and when the first, third and fourth paragraphs of the answer are read together the court was not in error in sustaining the demurrer to the first paragraph, as well as the third and fourth paragraphs.

(h) The judgment declares forfeited all the right, title and interest that each of the defendants has to the land and which is claimed through the three patents to Malcolm Hart, which are on file, but according to the provisions of section 4076d the court was only authorized to declare a forfeiture of the title of the heirs and devisees of Hart to the lands claimed by them through the patents on file, and this judgment could not be extended to in any wise affect the title claimed by the Brambletts, although the title claimed by the Brambletts is based upon the patents on file.

The judgment is therefore reversed, and cause remanded with direction to set aside the judgment and to overrule the demurrer to the second paragraph of the answer, and to sustain the demurrers to the other paragraphs and for other proper proceedings not inconsistent with this opinion.

All the members of the court sitting.