## Johnson, et al. v. McKenna, et al.

(Decided October 10, 1916.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Municipal Corporations—Construction of Sewers.—Under section 3105 of the Kentucky Statutes cities of the second class are authorized to pay the cost of a sewer, where the total cost of construction exceeds $1.00 per each abutting foot, by assessing the abutting property not to exceed $1.00 for each abutting foot and by paying the balance out of the general fund.

2. Municipal Corporations—Construction of Sewers—Pleading—Assessment—Liens.—In an action to enforce the lien for the assessment against property for the construction of a sewer under the above section of the statutes, a petition having complied with the provisions of the statute by alleging in substance that the improvement was made and the work accepted pursuant to and by ordinance of the city duly passed in accordance with law, stated a good cause of action, and was not rendered demurrable because it set out with more particularity than was necessary the ordinance and proceedings under which the work was done and accepted, but failed to state the ordinance was published.

F. J. BAUGHNER and SCHMIDT & HOLMES for appellants.

ORIE S. WARE and ELMER P. WARE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This action was filed in the Kenton circuit court to enforce payment of a special assessment levied against

the property of appellants by the city of Covington, to
pay for the construction of a sewer laid by appellees
under contract with, and pursuant to ordinance of, the
city.

Appellants' lot fronts 45 feet upon the street and
abuts 131.72 feet on an alley in which the sewer was con-
structed.    The    sewer    constructed    along    appellants'
property was a large one, connecting trunk sewers, and
made available for connections to be made with abutting
property.    The total cost of the sewer was $5,984.10,
and the number of abutting feet 2,127.29.    The city as-
sessed against the abutting property a tax of $1.00 for
each front or abutting foot, and the remainder of the
cost was paid by the city out of the general fund.    No
question is made that all of the necessary preliminary
steps were not regularly taken, but it is contended the
city did not have the authority to provide for the cost
of the sewer in the manner attempted, and the payment
of the tax as assessed is resisted upon the ground that
the city did not have this authority.

To determine this question a construction of section
3105 of the Kentucky Statutes is necessary.    This sec-
tion was originally enacted in 1894, and as it now stands
is the result of amendments thereto in 1906 and 1910.
The amendment of 1906 need not be considered, as upon
the question involved here it is identical with the act of
1910.    The act of 1894 is as follows:

"The general council shall have power to construct
sewers along or under any of the streets, alleys or high-
ways of the city, and may assess the entire cost, includ-
ing intersection, of constructing the same to an amount
not exceeding one dollar per front foot of the abutting
property upon the lots and lands bounding or abutting
upon said streets, alleys or highways in, under or along
which the sewers shall have been constructed; the cost
of the construction of sewers, not exceeding said sum
of $1.00 per front foot of the abutting property, shall be
apportioned equally on the said abutting lot owners
according to the front feet.    When the amount of the
quotient, after dividing the entire cost of the construc-
tion of the sewer, as estimated and computed to the
general council by the engineer by the number of front
or abutting feet, exceeds the sum of one dollar per front
or abutting foot, then and in that event, the entire cost
of construction of said sewer shall be assessed upon the

lots and lands in the neighborhood of said sewer which may be benefited thereby, according to the benefits received; and in every such case the council shall by ordinance fix and determine the amount of tax to be levied upon the several lots or lands so benefited. The general council may, however, out of the general fund contribute and pay toward the construction of said sewer such part thereof as may to the council seem proper. The tax provided for in this section shall be a lien upon such abutting or benefited property, as the case may be, and may be collected and enforced, as street improvement liens are collected and enforced; but the amount of sewer tax assessed against any lot or land shall in no event exceed one dollar per front or abutting foot.''

The material parts of section 3105 of the statutes as amended in 1910 are as follows:

''The general council shall have the power to construct sewers along or under any of the streets, alleys or highways of the city, and may assess the entire cost thereof, including intersections, upon the lots and lands in the neighborhood of said sewers which may be benefited thereby, according to the benefits received, and may levy a special local tax on such lots and the lands for the cost of such improvements so assessed thereon, which tax shall be due and payable at the office of the City Treasurer upon completion of the work and acceptance thereof by the general council, and no property shall be exempt from such improvement tax. In every case the general council shall by ordinance or resolution fix and determine what lots and lands are benefited thereby, and fix and determine the amount of tax to be levied upon the several lots or lands so benefited: Provided that where the cost of a sewer does not exceed the sum of one dollar per abutting foot of the property bounding or abutting upon the streets, alleys or highways in, under or along which such sewer may be constructed, then such bounding or abutting property shall be deemed the property benefited thereby, and said cost shall be apportioned and assessed equally on such abutting lots or lands according to the feet abutting. No ordinance for the construction of a sewer at the cost of the abutting or benefited property owners shall be passed until a resolution declaring such construction a necessity, and setting out in general terms the property subject to the payment of the cost of same, shall have

passed by a two-thirds vote of the members elect of each board of general council, and the determination as to the necessity of any such sewer shall be final. . . . The general council may provide for the construction of sewers out of the general fund of the city.''

The ordinance providing for the construction of the sewer declared it to be a necessity; that the abutting property would be benefited by the improvement to the amount of $1.00 per front foot, and assessed a tax of $1.00 per front foot against the abutting property, payable to the contractors on the cost of construction, and that the balance of the cost should be paid out of the general funds of the city. It is the contention of appellants that, since the cost of construction of this sewer was in excess of $1.00 per foot of the abutting properties, under the Act of 1910 the city did not have the power to pay for the sewer by assessing a tax of $1.00 per foot on the abutting property, and by paying the balance of the cost out of the general tax fund; that the city under the present law may assess the abutting property with the cost of the construction only when that cost is less than $1.00 to each foot abutting; that where the cost, as in this case, exceeds $1.00 per abutting foot, the city is limited to one of two plans; either to pay the whole cost out of the general fund, or to assess the whole cost against the property in the neighborhood benefited by the sewer in proportion to the benefits. It will be noticed that under the act of 1894 it was provided that the city could, out of the general fund, pay such part of the cost of a sewer, in excess of $1.00 per front foot assessed against abutting property, as it should deem proper, and that this provision is omitted from the Act of 1910 as it was in the Act of 1906, but that the Act of 1910 authorized the city to pay for sewers constructed thereunder out of the general fund, a provision not found in the Act of 1894. It is contended by counsel for appellants that this change in the law manifests a purpose upon the part of the legislature to withdraw from the city the power theretofore conferred, to assess $1.00 per front foot against abutting properties when the total cost of construction exceeded the sum thus attainable, and to pay the balance out of the general fund.

As stated by the chancellor in his opinion, ''This contention as to the intention of the legislature would

seem logical and sound, were it not for the fact that under the Act of 1894 the power was not given the city to construct sewers and pay for them out of the general fund, but was only authorized to contribute to a part of the cost out of the general fund, while the amendments of 1906 and 1910 give full power to the city to construct sewers and pay for them out of the general fund, and thus having given the larger power of paying for their construction out of the general fund it was not deemed necessary to reiterate the language contained in the former act giving power to contribute toward or pay a part of the cost of construction out of the general fund, for the larger included the lesser grant of power.''

It is conceded by all of the parties that the sewer in question is a connecting trunk sewer and a large one, and it is stated by counsel for appellants in brief, that the property in a large portion of the city, about 120 acres, is served, in part at least, in connection with the other sewers in the territory and therefore benefited by this sewer, and it is conceded for appellants if the city had constructed a smaller sewer, sufficient simply for the needs of abutting property, at a cost of $1.00 per abutting foot, the whole of the cost of the sewer could have been assessed against the abutting property; but it is argued that because the city constructed a sewer large enough and sufficient not only to serve the abutting property, but to serve its purpose as a part of the general sewerage system of the city as well, the city must under the present law, by design of the legislature, assess the cost of this sewer in proportion to the benefits against all of the property benefited, even though the other property thus alleged to be benefited may have paid an assessment of $1.00 per front foot for the construction of the sewers in front of such property. As estimated by counsel for appellants, the total cost to them, under the construction for which they contend, for this sewer abutting their property 176.72 feet, would not have exceeded $5.00. That the legislature intended to limit the city to a scheme in the payment for sewers that would permit it to assess a tax of $1.00 per front foot against abutting property if it built a small sewer, but would force it, if it built a sewer large enough not only to accommodate abutting property but of a size necessary to form an integral part of the general sewerage system of the city, to limit the assessment against

abutting property to less than three cents per front foot, or else pay the whole cost out of the general fund, is manifestly unsound. We are convinced that the legislature had no such intention by the amendments to the Act of 1894, and that these amendments enlarged rather than restricted the powers of the city in the manner of paying for the construction of sewers. If appellants' contention is correct, the plan provided by the legislature for the construction of sewers in cities of the second class is inequitable and practically unworkable. If, however, we accept the construction of the statute placed upon it by the lower court, the city is furnished a practical means for constructing and paying for sewers, and property owners are protected against excessive assessments by the provision that the assessments against abutting property cannot exceed $1.00 per foot in any event. That this is what the legislature meant to do by this section is not questionable.

In addition to providing that the general council of the city shall have the power to construct sewers and assess the entire cost therefor upon the lots and lands in the neighborhood of the sewer which may be benefited thereby, or may construct sewers and pay for same out of the general fund, the present law provides that in every case the general council shall, by ordinance or resolution, fix and determine what lots and lands are benefited thereby, and fix and determine the amount of tax to be levied upon the several lots or lands so benefited, provided that where the cost of the sewer does not exceed the sum of $1.00 per abutting foot the property, that is abutting property, shall be deemed the property benefited thereby. We are of the opinion that it is only when the *cost to the abutting property owners* (and not the total cost of the sewer) is in excess of $1.00 per front foot that the city is required to determine what lots and lands are benefited, and to fix and determine the amount of tax to be levied against same; and that, where the *cost to the abutting property owners* does not exceed the sum of $1.00 per abutting foot, such abutting property shall be deemed the property benefited. To make this construction unavoidable it is only necessary to assume that the legislature meant, by the word "cost" as used, to refer to the *cost to the abutting property owner* under whatever plan for payment the city might adopt, and not to the total cost of the

sewer. To so assume does no violence to the language used, provides a workable and equitable plan for the construction and payment of sewers, and affords equal protection to all abutting property owners.

It is further provided in the Act of 1910, as follows:

"The lien herein provided for shall take precedence over all other liens, whether created prior or subsequent thereto, except State, county and municipal taxes and prior improvement taxes, and shall not be defeated or postponed by any private or judicial sale or by any mortgage or by any error or mistake in the description of the property or in the name of the owners thereof. Nor shall any error in the proceedings of the general council exempt any property from the lien for, or payment of, such taxes after the work has been done and accepted as provided in this section; but the general council or courts in which suits are pending, shall make all corrections, rules and orders to do justice to all parties concerned; and in no event shall the city be liable for any part of the cost of such improvement."

Counsel for appellants also contend that the last sentence in the above, "and in no event shall the city be liable for any part of the cost of such improvement," is conclusive that the legislature meant that the city should not in any event assume any part of the cost of construction of the sewer. This construction, however, is contradicted by the provision that "the general council may provide for the construction of sewers out of the general fund of the city." What the legislature meant by the sentence referred to from the connection in which it is used is clearly that the city should not in any event be liable for any part of the cost of improvement that is assessed against and made a lien upon the abutting property.

We therefore concur in the construction placed upon this statute by the chancellor and hold that the assessment against appellants was valid.

2. Appellants contend that the petition herein does not state a cause of action, and that their demurrer to same should have been sustained because it does not allege that the ordinance providing for the construction of the sewer and the assessment of the abutting property was advertised as required by law. However, it is provided, in the same section of the statute we have been considering, that the assessments against property

thereunder shall be a lien upon same and may be enforced as other liens on real estate by actions brought in the name of the city, or contractor entitled thereto, and in any such action ''an allegation in substance that the improvement has been made and the work accepted pursuant to and by ordinances of the city duly passed in accordance with law, shall be a sufficient pleading of the ordinances and proceedings under which the work was done and accepted, without setting out the same in full.''

The petition having complied with this provision of the statute is sufficient, and is not rendered demurrable by reason of the fact that it set out with more particularity than was necessary the ordinance and proceedings under which the work was done and accepted, but failed to state that the ordinance was published. If the ordinance was not published according to law, the fact could have been pleaded and the question raised whether such failure was a defense after completion and acceptance of the improvement. This appellants did not do. The petition stated a good cause of action and the court did not err in overruling the demurrer thereto.

After appellants' demurrer to the petition had been overruled, they answered and a demurrer was sustained to the answer, and they then filed an amended answer to which a demurrer was also sustained. Appellants are complaining of the court's action in sustaining these demurrers, but neither the answer nor amended answer traversed any material allegation of the petition or presented any affirmative defense. The answer as amended is merely a statement of conclusions of law based upon appellants' construction of the statute and a denial of the legal conclusions of the court's construction thereof, and therefore does not present any defense that was not raised and determined by the demurrer to the petition.

We do not deem it necessary to set out the answer and amended answer here, since to do so would unduly lengthen this opinion, and can serve no useful purpose.

Appellants having declined to plead further, judgment was rendered against them for the amount of the assessment and costs, with a lien upon their property to secure same.

For the reasons indicated this judgment is affirmed.