## Ball, et al. v. George M. Eady Company, et al.

(Decided February 21, 1922.)

### Appeal from Whitley Circuit Court.

1. Municipal Corporations—Street Assessment Lien—Pleading.—In an action to enforce a street assessment lien in a city of the fourth class, the provision of section 3574, Kentucky Statutes, being a part of the charter of cities of that class, that in such action "an allegation in substance that the improvement had been made and the work accepted pursuant to and by ordinances of the city duly passed in accordance with law," dispenses with the necessity of the plaintiff's alleging the adoption of a resolution, prior to the ordering of the improvement, designating the street or public ways to be improved and setting out the character and extent of the improvement and declaring the same to be a necessity, as provided in section 3570.

2. Municipal Corporations—Street Assessment Lien—Pleading.—The purpose of that provision in section 3574 was to dispense with the cumbersome and laborious process of pleading in detail all of the council proceedings, which under the former rule was necessary to the validity of the plaintiff's lien, and to authorize the plaintiff in such cases to plead a conclusion of law as to the validity of such proceedings, and in effect to place upon the defendant the necessity of pleading any fault or illegal proceeding shown by the record of the council upon which he might rely as a defense.

3.  Municipal Corporations—Street Improvements—Pleading.—The provision of section 3574 that such allegation "shall be a sufficient pleading of the ordinances and proceedings under which the work was done and accepted," embraces the preliminary resolution required by section 3570 and all other ordinances and proceedings necessary to the doing of the work on the streets.

4.  Evidence—Public Record—Burden of Proof.—If a jurisdictional fact depends upon what a public record shows, it is within the power of the General Assembly in a matter of procedure to require the defendant in such an action to assume the burden of showing from the record the want of jurisdiction.

5.  Municipal Corporations—Act Changing to Another Class—De Facto City.—Even if an act of the General Assembly changing a city in this state from one class to another class is unconstitutional, where it is shown that the city has for several years been operating under the charter for cities of the class to which it has ostensibly been assigned by the legislative act, it is a de facto city of that class.

6.  Pleading—Construing Paragraphs Together.—Where in one paragraph of an answer there are allegations and admissions which show what is meant by a denial in another paragraph thereof, they will be construed together, and the denial in one paragraph interpreted in the light of the allegations and admissions in the other.

7.  Municipal Corporations—Pleading.—The allegation in one paragraph of an answer that a city had no legal board of council because certain persons theretofore elected or appointed to the council had, for certain reasons, vacated their offices, although still assuming to act as such, makes clear what is meant by a denial in another paragraph that the council had passed certain resolutions or ordinances.

8.  Officers—Color of Title.—The acts of one having color of title to an office and assuming to act as such officer are valid as to third persons and the public, as the public is not required in its dealings with persons apparently having title to public office and being in possession thereof, to look to the validity of their titles.

9.  Officers—Collateral Attack.—In actions between third parties involving the validity of the conduct of public officials, there can be no collateral attack upon the title of an official who is assuming to act and who apparently has title to the office.

10. Municipal Corporations—Evidence.—The evidence fails to show any fraud or collusion between the members of the council and the contractor.

TYE & SILER for appellants.

BLAKEY, DAVIS & LEWIS and STEPHENS & STEELY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellee filed this equitable action seeking to enforce a statutory lien for street improvements on certain pieces of property in the city of Corbin, a city of the fourth class.

In the original petition it is alleged:

"That the improvement of Center street from Main street to Laurel avenue and Main street from Center street to First street was made by this plaintiff and the work of said improvement was accepted pursuant to and by ordinances of the city of Corbin duly passed in accordance with law,"

and then it alleged the general council of the city of Corbin had apportioned the cost of the improvement among the owners of the abutting lots, and fixed the amount apportioned against each lot.

In an amended petition thereafter filed it was alleged "that the improvement of Center street from Main street to Laurel avenue and the improvement of Main street from Center street to First street was provided for and ordered to be done by ordinances duly passed in accordance with law by the defendant, city of Corbin, and that pursuant to said ordinances a contract was made between the said city of Corbin and the plaintiff, George M. Eady Company, dated May 6, 1919, by which said George M. Eady Company agreed to make said improvement of said streets at the cost of the abutting property owners."

Certain of the defendants filed their joint answer in the first paragraph of which they deny the city of Corbin is now or was at the time of the commencement of the action a city of the fourth class of the Commonwealth of Kentucky "for the reasons set forth in paragraph two hereof." They then deny in the first paragraph any improvement of Center street or Main street in the city of Corbin,

"Was heretofore made or accepted pursuant to or by ordinance of the city of Corbin, or that any ordinance of the city of Corbin was duly or at all passed in relation thereto, or that the city of Corbin, or its board of council, ever apportioned the cost of such improvement, or of any part thereof, or that any ordinance of the city of Corbin, or its board of council was ever passed or published in relation thereto, or that the city of Corbin, or its board of council, ever by ordinance or otherwise levied a tax against either of these defendants to cover such improvement, or any part thereof."

In the second paragraph of the answer it is alleged
the defendant, city of Corbin, had been by an act of the
General Assembly classified as a city of the fourth class,
but that the city as so classified contains territory lo-
cated in each of the counties of Knox and Whitley, about
one-third thereof in Knox and two-thirds in Whitley;
that a part of the defendants reside in Knox county and
a part of them in Whitley county; that the city of Corbin
did not at the time of the classification have a population
of three thousand or more, nor did that part of the city
located in Knox county, nor that part located in Whitley
county have then a population of three thousand or more,
and, therefore, the General Assembly of the Common-
wealth of Kentucky did not then have and never had au-
thority to classify a city having territory in each of two
counties, or to assign to any class a city having territory
in each of two counties, and its act in so classifying the
city of Corbin was and is unconstitutional.

In the third paragraph of the answer it is alleged
that on the 9th day of July, 1918, J. A. Gilliam was ap-
pointed mayor of the city of Corbin by the board of coun-
cilmen to fill the vacancy then existing because of the res-
ignation of Nelson, who had been theretofore duly elected
for a four year term ending the first Monday in January,
1922, and that at the November election, 1918, no election
was held to fill the vacancy in the office of mayor caused
by the resignation of Nelson, and that after said Novem-
ber election, 1918, the board of council had never reap-
pointed Gilliam. The paragraph then proceeds to allege
the city of Corbin did not have a board of council "at the
time it undertook by ordinance to provide for the im-
provement of Center street and Main street for which
recovery is sought by the plaintiff in this action, because
one of the members thereof, to-wit, J. A. Hood or Alex
Hood, had theretofore removed from the corporate lim-
its of the said city with no intention of returning thereto
and had thereby vacated his office as such councilman; that
at the time the defendant, city of Corbin, undertook to
adopt a resolution designating the improvement of Center
and Main streets, as well as the time it undertook by ordi-
nance to provide for the improvement of said streets,
and also at the time it thereafter undertook to accept
the improvement of said streets by the plaintiff and ap-
portioned the cost thereof, it had no mayor or board of
council because of the alleged vacancy therein by the re-

moval of Alex Hood from and beyond the corporate limits of the city, and further because of the fact that one of the members of the council, to-wit, O. W. Black, after having been duly appointed and qualified as such member thereof accepted an office as special police judge in and for the defendant city of Corbin and acted as such, which office was incompatible with the one he then and theretofore held as a member of said council, and which acceptance and action on his part operated to and did vacate his office as a member of such council, that by reason of all of which the defendant city of Corbin had no mayor or board of council or quorum for the transaction of business when any ordinance to which the plaintiff refers was passed or published, or when the defendant city undertook to adopt a resolution designating the improvement of either Main street or Center street, or any part thereof, or to provide for the improvement of either or any part of said streets or to accept any improvement thereof made by the plaintiff or to apportion the cost thereof; that no ordinance or resolution of the board of council for the city of Corbin making any designation for the improvement of either Main street or Center street or for the improvement of either or any thereof, or providing for the improvement of either Main street or Center street or for the improvement of either or any thereof, or accepting the alleged improvement made by the plaintiff, or apportioning the cost of any improvement for which the plaintiff seeks to recover herein was ever passed or published by the defendant city or by its board of council.''

Thereafter the circuit court sustained a demurrer to each of the three paragraphs of the answer and then the defendants filed an amended answer wherein they alleged that the city of Corbin and its board of council had fraudulently and in collusion with the plaintiff accepted the work and confirmed the estimate of the city engineer as to the cost thereof, and sets out in detail alleged facts and circumstances constituting such fraud and collusion.

Much evidence was taken on the issue of fraud and collusion, but upon a final submission the chancellor below held that it had not been sustained, and entered a judgment enforcing the plaintiff's statutory liens, and from that judgment this appeal is prosecuted.

Section 3570, Kentucky Statutes, being a part of the charter for cities of the fourth class, provides:

"Before the board of council shall order the improvement of any street, alley, public way or sidewalk, as provided in section 3563, it shall adopt a resolution designating the street or public ways or sidewalks proposed to be improved, setting out in general terms the character and extent of the proposed improvement and declaring such improvement to be a necessity."

Section 3574, being a part of the same charter in prescribing how such liens for street improvements may be enforced, says:

"Such liens may be enforced, as other liens on real estate, by action brought in the name of the city or the contractor entitled thereto, and in any such action an allegation in 'substance that the improvement had been made and the work accepted pursuant to and by ordinances of the city duly passed in accordance with law shall be a sufficient pleading of the ordinances and proceedings under which the work was done and accepted without setting out the same in full."

The first complaint made by appellants is that there being no specific allegation in the plaintiff's pleadings that such a resolution as is provided for in section 3570 by the board of council before the improvement was ordered, setting forth the character or extent of the improvement and declaring the same to be a necessity, the demurrer to the answer should have been carried back to the petition and sustained. The argument is that such a resolution is jurisdictional and is a condition precedent to the right of the council to enter into a contract for the improvement of streets, and is not therefore covered by or embraced in the provision of section 3574 authorizing the plaintiff in such an action to merely allege in substance that the improvement had been made and the work accepted pursuant to and by ordinances of the city duly passed in accordance with law, and such a pleading shall be a sufficient plea of the ordinances and proceedings under which the work was done and accepted.

Looking to the comprehensive purpose behind the enactment of the quoted provision in section 3574, and in the light of the abuses that enactment was intended to correct we cannot sustain this contention.

Formerly in such cases the rules of pleading required that a plaintiff should, to make his pleading good and to justify the enforcement of his lien, set out in detail and at length all the acts of the municipal board necessary to

give him the statutory lien, and this enactment, which is now in the charters for most, if not all, classes of cities in this state, was intended to dispense with this cumbersome and laborious process of pleading in detail all of such proceedings; and was intended not only to permit a plaintiff in such cases to thereby plead a conclusion of law as to the validity of such proceedings, but in addition placed upon the defendant the necessity, in defending such action, of pleading as a defense any fault or illegal proceeding shown by the record of the council upon which it might rely.

Nor is there any hardship in this rule. The records of the city council are public records and available as well to the defendant as to the plaintiff, and the purpose manifestly was to relieve the plaintiff in such action from setting forth in detail all the proceedings thereof which go to make out for him a valid lien, and to require a defendant who relies upon anything shown in the record to defeat the lien to specifically point it out, and thereby simplify the pleadings and issues.

The language of section 3574 is sufficiently comprehensive to embrace the preliminary resolution required by section 3570, for it expressly says that such allegation "shall be a sufficient pleading of the ordinances and proceedings under which the work was done and accepted," thereby clearly embracing not only all ordinances but all proceedings which led up to the doing of the work on the streets, and culminated in the acceptance thereof by the council. Johnson v. McKenna, 171 Ky. 389.

Even if the preliminary resolution setting forth the character and extent of the proposed improvement and declaring the necessity therefor, is jurisdictional, the jurisdictional fact depends upon what a public record shows, and it is within the power of the General Assembly in a matter of procedure to require the defendant in such an action to assume the burden of showing from the record the want of jurisdiction.

For the purpose of this litigation it is unimportant whether the legislative act changing the city of Corbin from a fifth class to a fourth class city is unconstitutional. For if it be conceded that such an act was unconstitutional, which is not decided, the record discloses that the city has for several years been operating under the charter for cities of the fourth class and in any event as to

third parties is a *de facto* city of that class. Providence v. Shackelford, 106 Ky. 378; Wendt v. Berry, 154 Ky. 586.

In the first paragraph of the answer above quoted it was denied any improvement of Center street or Main street was made or accepted pursuant to or by ordinances of the city of Corbin or that any ordinance of the city of Corbin was duly or at all passed in relation thereto, or the cost apportioned; and in the third paragraph of the answer after setting forth the reasons why, in the opinion of the pleader, the mayor and two other members of the council had, as alleged, forfeited their offices as such, it is then alleged, with those preceding allegations as a premise, that the city of Corbin did not have a board of council when it undertook by ordinance to provide for this improvement or at the time it adopted a resolution designating the improvement of Center and Main streets, and because as alleged these three officials had forfeited their offices there was no quorum in the board of council when such resolutions, ordinances, etc., were passed or published; and then at the conclusion of these allegations, and as a resultant therefrom, it is alleged that no ordinances or resolution of the board of council making any designation for the improvement or providing for the improvement or accepting the work or apportioning the cost was ever passed or published.

In other words, interpreting paragraph one and paragraph three together the allegation is that because of the forfeiture by two members of the council of their offices and because an election to fill a vacancy in the office of mayor had not been held when it should have been, there was no quorum of the board of council authorized to take these steps or pass these ordinances.

Manifestly, the allegations of the third paragraph of the answer must be interpreted as an admission that a body theretofore composed of persons who had been elected or appointed members of the board of council for the city of Corbin had, assuming to be such members, although they had by their conduct forfeited their right to act as such, passed certain resolutions and ordinances which the defendants now allege were not passed because they had no right to act in the capacity of members of that board, and therefore, no such things were passed. Taking paragraph one and paragraph three together and considering their allegations together they plead nothing more nor less than a legal conclusion that because cer-

tain men theretofore legally, appointed or elected as members of the board of council had done such things as to forfeit their membership, although their offices had not been declared vacant by a court having jurisdiction, still their acts were absolutely void.

In the case of Caruso v. Brown, 142 Ky. 76, the defendant was sued on a note and filed an answer in three paragraphs. In the first paragraph he denied that the note sued on was his individual obligation, and in the third paragraph he charged that because of the fraud of the plaintiff and his attorney he was induced to endorse the note in the belief that he was acting in his capacity only as treasurer of a certain company, and this court in construing those two paragraphs together said:

"Paragraph 1, in effect, denied that the note sued on was appellee's individual obligation, while paragraph 3 makes plain why this allegation was made; that is, it shows that appellee endorsed the note upon the assurance that he was simply being bound in his official capacity. The effect of the two paragraphs, therefore, is to show that he was bound only in his official capacity and not in his individual capacity."

The situation here is the same; the allegations in the third paragraph to the effect that there was no legal board of council make perfectly plain what the defendants meant in their first paragraph when they denied that the council had ever passed any such resolutions or ordinances.

Construing, therefore, the first and third paragraphs together the court did not err in overruling the demurrer to either of them. Bronaugh v. Commonwealth, 188 Ky. 121.

Counsel have apparently abandoned the idea that there was no action of the council because the three named members had forfeited their rights to act as members, but now rely upon the detached portion of the third paragraph wherein there is a denial there was any ordinance or resolution of the board of council designating the property for improvement or providing for the improvement or accepting the work after the improvement, or apportioning the cost thereof. But that concluding clause of the third paragraph must be read and construed in the light of the previous allegations of that paragraph, and so read and construed it means only that those things

were not done for the reason that the three members of
the board had forfeited their offices. ·

The pleading on its face shows that the board or
certain persons elected as members of the board and as-
suming to act as such, undertook to take some action on
those subjects, and yet the defendants, as it was their
duty to do under the rule of pleading laid down in section
3574, failed to point out any specific thing which made the
proceedings of the council illegal or which would defeat
the right of the plaintiffs to enforce the lien.

The allegation as to Gilliam, the mayor, is that he
was appointed mayor to fill a vacancy, but that because
no election was thereafter held at the proper time as re-
quired by law, to elect one to thereafter fill the vacancy,
Gilliam ceased to be mayor at that time; as to Hood it is
alleged that he being one of the members of the council
had before the passage of the ordinance providing for the
improvement removed from the corporate limits of the
city and had thereby vacated his office; as to Black, that
he, although having previously been duly appointed and
qualified as a member of the board, accepted an incom-
patible office and acted as such officer whereby he va-
cated his office as a member of the board.

From this pleading it is apparent that each of the
three persons referred to had been previously duly ap-
pointed or elected members of the board of council, and
there is no allegation that the right or title of either of
them to the office had ever been assailed, or that there
had been a judgment of any court adjudging the office of
either of them to be vacant.

It is fundamental that the acts of one having color of
title to an office and assuming to act as such are valid as
to third persons and as to the public. It is a rule of pub-
lic policy that the public is not required in its dealings
with persons apparently having title to public office and
being in possession, to look to the validity of their titles,
but the acts of such persons having color of title and
being in possession, insofar as they affect such third per-
sons and the public generally, will be treated with the
same validity and binding force as if they were in fact
officers de jure.

Under the allegations of the answer the three persons
named were undoubtedly de facto members of the board
and there having been no judgment of a court declaring
their several offices vacant, so far as the public was con-

cerned and so far as their acts go to affect third persons they were perfectly valid.

Not only so, growing out of this rule upholding the acts of *de facto* officers is another well recognized rule which makes the pleading of appellants fatally defective. That is, in actions between third parties involving the validity of the conduct of public officials there can be no collateral attack upon the title of any such official assuming to act and apparently having the title to a public office. Howard v. Burke, 140 A. S. R. 159, *and note.*

On the question of whether there was fraud or collusion between the members of the council and the contractor little need be said. There was voluminous evidence taken about a multitude of insignificant things. We have read the evidence carefully and concur with the finding of the chancellor below that there was no evidence of any such fraud or collusion as would justify a denial of the plaintiff's right to recover.

Some of the evidence dealt with the cost of street improvements in Barbourville and Williamsburg, nearby cities, and it was sought to show that the work at those places was done at a much smaller price; but the evidence for the plaintiff satisfactorily shows that the work in those places had been done under different contracts and different specifications.

Again, it was sought to show that the dirt excavated was dumped on the lot of one of the members of the street committee, thereby largely increasing its value, but there is nothing from which it may be assumed that this was more than an accident, or at most that the lot was selected because of its convenience. Besides the evidence unmistakably shows that dirt was dumped on many other lots.

It is further sought to show that the inspection by the street committee was very superficial and incomplete, and that members of the committee had declined during the inspection to take up a part of the street to see whether the specifications had been complied with. The evidence, however, satisfactorily shows that there was a *bona fide* inspection, and that the contractors and committee declined to have the work dug up because it would involve immediately having repairs made in the new street. There were many other similar unimportant things gone into in the evidence, which it would be unprofitable to discuss, but it is sufficient to say each member of the council,

including the mayor, the city engineer and the officers of the contracting company, testified, and their evidence fully justifies the finding of the chancellor that there was no corruption or collusion.

Judgment affirmed.